UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NAKIA COLE,

        Plaintiff,

v.

                                                                      Case No. 11-10799

COUNTY OF JACKSON and CORY CAROFFINO,    Honorable Julian Abele Cook, Jr.

        Defendants.


ORDER

This case involves a complaint by the Plaintiff, Nakia Cole, who has accused the County of Jackson in Michigan and one of its law enforcement officers, Cory Caroffino, of gross negligence and utilizing an excessive amount of force when attempting to effectuate an arrest, in violation of her fundamental rights under the Fourth Amendment. Her complaint has also included a claim for municipal liability under 42 U.S.C. § 1983 against Jackson County for the alleged failure to train and supervise its officers. Now pending before the Court is a motion for summary judgment that was jointly filed by the Defendants.

I.

The parties' respective versions of the salient facts in this case are contested and have been summarized below. According to the Defendants, Cole's children were students at the Memorial Elementary School within the East Jackson, Michigan public school system during the times that are relevant to this case. During the spring semester of 2008, her children had accumulated a

significant number of tardy and absence marks on their school records. Acting upon the advice of the Middle Elementary School Principal's Association, Sarah Elizabeth Murphy, in her capacity as the principal of the Memorial Elementary School, began to document her interactions with Cole and the children's father, Eddie Kidd. Concerned with the totality of her findings, Murphy contacted a Jackson County truancy liaison officer, Victoria Burke, who, after being advised of the ongoing truancy problems, filed a petition in the Jackson County Probate Court which was designed to address the issue of educational neglect.

During the morning of March 5, 2008, Kidd brought his children to school and asked to speak with Murphy about the children's attendance records. Unpleasant exchanges followed this meeting with Murphy who asserted that Kidd became angry and threatened her with bodily harm. According to Murphy, she immediately contacted the School Superintendent, Bruce Van Eyck, who instructed her to write and advise Kidd that his future presence at the school and its campus grounds would be limited thereafter.

Murphy then contacted Cory Caroffino who, having worked as the school liaison officer for the Sheriff's Department in Jackson County for nearly three years, agreed to deliver the letter to Kidd. Cole, who was at the children's school that afternoon, was invited by Murphy into her office so that the letter regarding Kidd could be delivered to her in Caroffino's presence. The meeting which followed ended in angry exchanges between Murphy, Cole, and Caroffino without any positive results. All of the participants at the meeting "pointed their fingers" at the other attendees. For instance, Murphy reported that Cole became increasingly agitated and angry during the meeting. On the other hand, Cole testified during her deposition that Caroffino became aggressive during the meeting and threatened to arrest her without providing any explanation. The meeting was

terminated when Caroffino directed Cole to (1) leave the school because of her alleged disruptive conduct, and (2) immediately secure the custody of her daughter to avoid arrest. Chaos followed. According to Murphy, Cole declined to leave the school building, preferring to yell and run down the hallways where the first grade classrooms are located. According to the police report that was written by Caroffino, he made an unsuccessful attempt to arrest her for disorderly conduct. According to him, by the time that he reached Cole she was kicking and doing everything possible to get away from him. Caroffino also reports that he (1) made an unsuccessful effort to subdue her with handcuffs as she continued to resist arrest, and (2) warned Cole that he would use pepper spray as a last resort. When Cole rejected the application of the handcuffs alternative, he sprayed the floor near Cole's face. Cole was thereafter placed in handcuffs and escorted her to the county jail without further incident.

Cole's version of the incident differs significantly from Murphy's and Caroffino's recitations of the events at the school. According to Cole, she exited Murphy's office and casually walked toward her daughter's classroom when - without warning - Caroffino forcefully grabbed her arm, swung her around, and slammed her body initially into the wall and eventually onto the floor despite Cole not offering any resistance to his commands. In an apparent counter comment to Caroffino's pepper spray statement, Cole testified during her deposition that he sprayed pepper very close to her face on two separate occasions.

Thereafter, Cole was charged with resisting arrest and disorderly conduct in violation of Mich. Comp. Laws § 750.81d. She pled no contest to the criminal charge of attempting to resist and obstruct an officer in violation of Mich. Comp. Laws § 750.92. She was sentenced to pay fines and costs. Cole states that she continues to suffer from wrist pain, anxiety, depression, nightmares, and

3

damaged vision from this episode.

## II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its

claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

.A. <u>Municipal Liability Claim</u>

Cole initially alleges that the City failed to (1) adequately train its police officers in the use of force and the constitutional rights of citizens and (2) supervise and/or discipline those officers who were known to have violated citizen's rights. The Defendants submit that the claim by Cole for municipal liability against Jackson County pursuant to 42 U.S.C § 1983 must fail because (1) she cannot show that the alleged violation of her civil rights was the result of an unconstitutional policy, custom, or practice that had been approved by the County, and (2) there is no evidence of a pattern of civil rights violations.

The liability of municipal entities under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, if an "action pursuant to official municipal policy of some nature caused a constitutional tort," then the municipality is liable as the wrongdoer. *Id.* at 691. "To succeed on a municipal liability claim, a plaintiff must establish that . . . her constitutional rights were violated and that a policy or custom of the municipality was the

'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac County*, 606 F.3d 240, 254–5 5 (6th Cir.2010). Local governmental units may only be held liable when an "action pursuant to official municipal policy of some nature causes a constitutional tort," and not on the basis of respondeat superior. *Monell*, 436 U.S. at 691.Therefore, a municipality may not be sued under 42 U.S.C.§ 1983 for an injury that was inflicted solely by its employees or agents. *Id.* at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Cole points to two substantive failures by Jackson County which support her arguments; namely, a failure to (1) supervise its law enforcement officers, and (2) properly train them to adhere to the laws which govern their conduct. The Court will address each in turn.

Under *Monell*, a municipality can be held liable for failing to supervise its police officers. *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). To succeed on a claim for failure to supervise or discipline, the plaintiff must prove that (1) the supervision or discipline was inadequate for the tasks the officers were performing; (2) the inadequacy resulted from the "deliberate indifference" by the municipality; and (3) the claimed inadequacy caused the injury. *Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Commissioners v. Brown*, 520 U.S. 397, 410 (1997). Additionally, in the failure to discipline context, a plaintiff must show "a history of widespread abuse that has been ignored by the city." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir.1994).

In support of her failure to supervise claim, Cole states that:

6

> Defendant County of Jackson had a longstanding custom or procedure or *de facto* policy of failing to supervise its police officers at the time of the incident. . . Defendant County of Jackson did not thoroughly conduct, review, or monitor its police officers' conduct and performance. Even though Defendant Caroffino testified that he received annual performance reviews, his personnel file only reflected two performance reviews from his date of hire to the date of the incident. Defendant County of Jackson's failure to review its police officer's performance on the job, allows its police officers to continuously violate citizens' constitutional rights causing severe physical and psychological injuries similar to what occurred in the instant matter.

Caroffino's personnel file is an insufficient basis upon which to demonstrate that Jackson County failed to supervise or discipline its law enforcement officers. Cole offers no additional evidence in support of this failure to supervise claim. Cole has not pointed to a single alleged inadequate policy or longstanding custom by Jackson County that could establish liability. Consequently, her proofs on this claim are not sufficient to present to a jury. Accordingly, Jackson County is entitled to a summary judgment on this issue.

A municipality "is liable under § 1983 for failure to train if the Plaintiff can prove three elements: (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality]'s deliberate indifference; and (3) that the inadequacy is closely related to or actually caused [Plaintiff's] injur[ies]." *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir.2008) (internal quotation marks and citation omitted). To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.* A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train claims. *Brown*, 520 U.S. at 409.

There is testimony from Caroffino which indicates that he was trained two to four times a

year on effectuating an arrest and the use of force. He also received training on the use of pepper spray when he was hired in 2002. Caroffino's personnel records do not include any citizen complaints of excessive force during an arrest. Furthermore, he has never been accused of any unlawful abuse of his authority. Additionally, Caroffino has been a certified law enforcement officer through the Michigan Commission on Law Enforcement Standards since graduating from the police academy in 2002.

Cole has failed to identify any prior incidents of police misconduct or inadequacies in the training of Jackson County police officers or prior instances of excessive force. Moreover, Cole has not offered any evidence to rebut or challenge the sufficiency of the Jackson County's training regime or proffered any analysis or criticism of its training program. She did not depose any supervisors or training officers or retain an expert witness on this training issue. Further, Cole has offer no evidence which purportedly links a lack of training to the alleged excessive force used against her. In essence, her proofs are simply not enough to carry the heavy burden of production that is necessary for a *Monell* claim. Therefore, the City is entitled to a summary judgment.

B.      Excessive Force Claim

The Defendants submit that they are entitled to an entry of summary judgment as it relates to Cole's Fourth Amendment claim for excessive force because she has acknowledged having pled no contest to a criminal charge arising out of facts that are related to this case.

In 1994, the Supreme Court in *Heck v. Humphrey* held that when a plaintiff who has been convicted of a criminal charge and thereafter seeks redress in a Section 1983 action:

> the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the

> plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. 512 U.S. 477, 487 (1994) (emphasis in the original).

To determine if a Section 1983 action is barred by a prior criminal conviction, the Court must look to the "relationship between the elements of the state conviction and the elements of the § 1983 claim." *Bobo v. City of Pontiac*, 2008 WL 1882705 at *4 (E.D. Mich. April 24, 2008) (quoting *Swiecicki v. Delgado*, 463 F.3d 489, 504 (6th Cir. 2006) (Sutton, J., concurring).

Cole pled no contest to attempted resisting and obstructing an officer in violation of Mich. Comp. Laws § 750.81d(1), which provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." The Sixth Circuit has pointed out that one can be convicted for obstructing an officer under Mich. Comp. Laws § 750.81d(1) simply for a "knowing failure to comply with a lawful command." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir.2010) (citing Mich. Comp. Laws § 750.81 d(7)(a) which defines "obstruct" under the statute to include "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command."

In *Schreiber*, the Sixth Circuit found that "an excessive-force claim [did] not challenge [a] conviction for attempting to resist arrest... The *Heck* decision applies only where a § 1983 claim would "necessarily" imply the invalidity of a conviction." *Id.* at 334-35. *See also Rogers v. Detroit Police Dep't*, 595 F.Supp.2d 757, 768–70 (E.D.Mich.2009); *Ballard v. Burton*, 444 F.3d 391 (5th Cir.2006) (§ 1983 claim for excessive force is not barred following conviction for assault because conclusion that defendant's use of force was objectively unreasonable would not necessarily call

9

plaintiff's criminal conviction for assault into question); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir.2006) (noting that if it determined that *Heck* bars excessive force claims whenever plaintiff was convicted of resisting a lawful arrest then "police subduing a suspect could use as much force as they wanted and would be shielded from accountability under civil law as long as the prosecutor could get the plaintiff convicted on a charge of resisting."); *Nelson v. Jashurek*, 109 F.3d 142, 145-6 (3d Cir. 1997) ("it is possible for a finding that [the defendant] was resisting arrest to coexist with a finding that the police used excessive force to subdue him").

Based on the record before the Court, the degree of force used by Caroffino and the amount of the Cole's resistance are disputed facts. A violation of Mich. Comp. Laws § 750.81d does not necessarily establish that the law enforcement officer's alleged conduct was objectively reasonable for purposes of an excessive force claim. The elements of the attempted offense to which Cole pled no contest do not implicate the degree of force that was used by Caroffino in subduing her, especially where the facts surrounding the incident are in dispute. Cole's excessive force claim will not imply the invalidity of her earlier conviction and is not barred by *Heck*.

Finally, with the respect to the excessive force claim, the Court notes that the Supreme Court has developed a "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386 (1989). Under the Fourth Amendment, the Court must examines "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" *Id*. at 397. The parties dispute nearly every aspect of the encounter in between Cole and Caroffino. Since it is not clear how much force was used against Cole, the Court cannot determine whether the efforts by Caroffino were reasonable or excessive.

C. Qualified Immunity Claim

Caroffino next submits that he is entitled to qualified immunity which, if applicable, would preclude the enforcement of Cole's Section 1983 claims. He maintains that his actions during the event in question were objectively reasonably under the circumstances of this case, and thus, do not constitute a constitutional violation. Moreover, he believes that his conduct did not contravene a clearly established right.

The doctrine of qualified immunity shields state actors from § 1983 liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 549 (6th Cir.2009) (internal quotation marks and citation omitted). In resolving the issue of qualified immunity, courts have utilized a two-step decisional process: "defendant enjoys qualified immunity on summary judgment unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir.2010) (internal quotation marks and citation omitted). The Supreme Court has explained that, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir.2011).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Flint ex rel. Flint v. Kentucky Dept. of Corrs.*, 270 F.3d 340, 346 (6th Cir.2001)

11

(internal quotation marks and citation omitted). The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he . . . was under an affirmative duty to refrain from such conduct." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir.2002).

"[T]he right to be free from excessive force is a clearly established Fourth Amendment right." *Binay v. Bettendorf*, 601 F.3d 640, 652 (6th Cir.2010) (internal quotation marks and citation omitted). To hold an individual police officer liable for the use of excessive force, a plaintiff must show that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay*, 601 F.3d at 650. "As a general rule, mere presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Id*. Additionally, "[e]ach defendant's liability must be assessed individually based on his own actions." *Id.*

In determining whether a constitutional violation based on excessive force has occurred, courts apply "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir.2007) (citing *Graham v. Connor*, 490 U.S. 386, 395–96 (1989)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "Relevant considerations include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight." *Fox*, 489 F.3d at 236 (internal quotation marks and citation omitted).

Here, the Court finds that Caroffino is not entitled to qualified immunity as it relates to Cole's excessive force claim. There is no dispute that Cole's right to be free from excessive force was clearly established at the time of the alleged violation. The issue here is whether Cole has set forth sufficient facts to show that Caroffino violated her Fourth Amendment rights. More precisely, whether the amount of force that he used to secure and detain her was objectively reasonable given the circumstances. The parties have presented the Court with two distinctly different versions of the facts.

The parties dispute whether (1) Cole calmly exited Murphy's office or if she left this principal's office while running and screaming; (2) Caroffino smashed her into the wall and then onto the floor when he attempted to restrain her; (3) she offered resistance to his arrest efforts; (4) Cole was advised by Caroffino that she was under arrest; (5) pepper spray was placed into her face; and (6) Cole's conduct presented a threat to Caroffino or others.

A jury must determine these material facts before a court can decide whether the amount of force used was excessive or unreasonable under the circumstances. Taking the available evidence in a light most favorable to Cole, sufficient facts have been offered to show that there may have been a violation of Cole's rights under the Fourth Amendment. Therefore, Caroffino is not entitled to qualified immunity.

D. Negligence Claim

Finally, the Defendants submit that they are entitled to the entry of a summary judgment on the state tort claim of gross negligence. The law in Michigan provides immunity to government

employees from tort liability for those injuries that are caused by them during the course of their employment if the challenged conduct "does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2)(c). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(2); See also, *Tarlea v. Crabtree*, 263 Mich.App. 80, 82, 687 N.W.2d 333 (2004). No liability attaches unless the defendants' actions were the proximate cause of the plaintiff's injury. *Id*.

In her complaint, Cole has advanced claims of gross negligence against Caroffino. However, the law in Michigan does not allow intentional acts - even when couched in terms of a breach of duty - to be the basis of a claim for gross negligence. *Miller v. Sanilac County*, (6th Cir.2010); *Van Vorous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132 (2004) ("[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence."). *See also Livermore v. Lubelan*, 476 F.3d 397, 407 (6th Cir.2007) (plaintiff's gross negligence claim failed because it was "predicated on intentional - rather than negligent - conduct); *Davis v. City of Detroit*, No. 05–72669, 2006 WL 2990511 at *7 (E.D.Mich. Oct.19, 2006) (plaintiff "may not simultaneously assert that [defendant's] actions were intentional for purposes of his federal claims . . . but then also claim that [defendant] acted with gross negligence.") *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir.2011) (applying *Van Vorous* and refusing to transform an excessive force claim into a claim of gross negligence). Cole's claims are based on her argument that Caroffino's actions were intentional and constituted acts of excessive force. Cole is not entitled to assert that the conduct was intentional, and, at the same time, contend that Caroffino acted with gross negligence.

IV.

For the reasons that have been stated above, the motion for summary judgment is granted in part and denied in part. (ECF 23). It is granted with respect to Cole's municipal liability and negligence claims However, it is denied with respect to Cole's excessive force claim. Finally, the request for qualified immunity is denied for the reasons that have been set forth above.

IT IS SO ORDERED.

Date: February 25, 2013
                s/Julian Abele Cook, Jr.
                JULIAN ABELE COOK, JR.
                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 25, 2013

                s/ Kay Doaks
                Case Manager